# EXHIBIT A.1



| |
|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. |

Name of Respondent: Hoshizaki America, Inc.

Address: 289 S. Culver Street

| City: Lawrenceville | State: Georgia | Zip Code: 30046 |
|---|---|---|

| Phone No.: 404-541-2900 (Counsel) | Fax No.: 404-541-2905 (Counsel) |
|---|---|

Email Address: sean.gordon@thompsonhine.com

Name of Representative (if known): Sean A. Gordon

Name of Firm (if applicable): Thompson Hine LLP

Representative's Address: Two Alliance Center, Suite 1600, 3560 Lenox Road

| City: Atlanta | State: Georgia | Zip Code: 30326 |
|---|---|---|

| Phone No.: 404-541-2900 | Fax No.: 404-541-2905 |
|---|---|

Email Address: sean.gordon@thompsonhine.com

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

See Exhibit A attached hereto.

Dollar Amount of Claim: $ Non-monetary

Other Relief Sought: ☑ Attorneys Fees ☐ Interest ☑ Arbitration Costs ☐ Punitive/Exemplary
☑ Other: Declaratory relief

Amount enclosed: $ 2,200.00
In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Commercial arbitrator with experience in applying Georgia contract law.

Hearing locale: Atlanta, Georgia

*(check one)* ☐ Requested by Claimant ☑ Locale provision included in the contract

| Estimated time needed for hearings overall: | hours or 2 | days |
|---|---|---|



Type of Business:

Claimant: Automatic Ice Maker Company          Respondent: Hoshizaki America, Inc.

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?
Yes

| Signature (may be signed by a representative): | Date: |
|---|---|
| | April 8, 2021 |

Name of Claimant: Automatic Ice Maker Company

Address (to be used in connection with this case): 400 South Avenue, Suite 6

| City: Middlesex | State: New Jersey | Zip Code: 08846 |
|---|---|---|
| Phone No.: 404-873-8500 (Counsel) | Fax No.: 404-873-8501 (Counsel) | |

Email Address: autoice01@aol.com

Name of Representative: Andrew B. Flake and Lindsey E. Hughes

Name of Firm (if applicable): Arnall Golden Gregory LLP

Representative's Address: 171 17th Street NW, Suite 2100

| City: Atlanta | State: Georgia | Zip Code: 30363 |
|---|---|---|
| Phone No.: 404-873-8500 | Fax No.: 404-873-8501 | |

Email Address: andrew.flake@agg.com and lindsey.hughes@agg.com

To begin proceedings, **please file online at www.adr.org/fileonline.** You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee.

## Exhibit A – Brief Description of the Dispute

Claimant Automatic Ice Maker Company ("Automatic Ice") seeks a declaration of the parties' status and legal rights under an expired distribution agreement. According to Section 14 of its terms, the parties' 2019 Distributor Agreement (the "Agreement"), in order to be extended, requires Respondents to "notify [Automatic Ice]…prior to the expiration of the then current term." When Respondents did not provide this notification of renewal prior to December 31, 2019, the Agreement simply expired ("This Agreement shall be effective for a period of one year from and after the date first above written [Jan. 1, 2019].") The parties then operated for a period of months without a master agreement and on an order-to-order basis, during which time Respondents confirmed they did not wish to enter into any new distribution agreement.

Notwithstanding the expiration of the Agreement much earlier, Respondents in February 2021 sent a purported "notice of breach" of the Agreement, followed by a "notice of termination," implying the Agreement had remained in effect through 2021 and that Automatic Ice had somehow breached it. Respondents also made a series of demands for performance under the Agreement as if it had never expired, going so far as to initiate an unwarranted legal action in the Northern District of Georgia. See Exhibit B. Because these actions by Respondent have created uncertainty concerning its legal rights, Automatic Ice seeks a declaration 1) that the Distribution Agreement expired as of January 1, 2020; 2) that no breach by Automatic Ice or default of the Distribution Agreement in 2020 or 2021 did or could have occurred; and 3) of the parties' respective post-expiration obligations concerning conclusion of their business relationship.

A copy of the arbitration clause in the Agreement, specifying "cancellation" and "breach" as among the matters subject to mandatory arbitration, is reproduced as Exhibit C. The full Distribution Agreement is included as Exhibit D.

Because Respondents have used their false allegations of a breach and other disparagement to competitively harm Automatic Ice, Claimant also reserves the right, following discovery in this matter, to amend its demand to address Respondents' unfair competition.

**<u>Exhibit B – Andrew Flake March 26, 2021 Letter to Sean Gordon</u>**



Atlanta Office
171 17th Street NW, Suite 2100
Atlanta, GA 30363-1031
Direct phone: 404.873.7026
Direct fax: 404.873.7027
E-mail: andrew.flake@agg.com

March 26, 2021

**VIA E-MAIL (Sean.Gordon@thompsonhine.com)**

Hoshizaki America, Inc. and
Hoshizaki Northeastern Distribution Center, Inc.
Attn: Sean A. Gordon, Esq.
Thompson Hine
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326

> Re:   Response to Purported Notice of Termination dated March 18, 2021 from
> Hoshizaki America, Inc. and Hoshizaki Northeastern Distribution Center, Inc.
> (together, "Hoshizaki")

Dear Sean:

As I e-mailed last week, I am responding by more formal letter on behalf of Automatic Ice Maker
Company ("Automatic Ice") to the Notice of Termination from Hoshizaki dated March 18, 2021.
Consistent with our understanding, in lieu of any form of notice that would otherwise be required, I
am sending correspondence directly to you as Hoshizaki counsel.

To begin with, Automatic Ice disputes that the notice of termination is in any way proper. Under
Section 14 of its terms, the Distributor Agreement, in order to be extended, requires Hoshizaki to
"notify Distributor…prior to the expiration of the then current term." When Hoshizaki did not
notify Automatic Ice prior to December 31, 2019 that it wished to extend the Agreement, the
agreement simply expired ("This Agreement shall be effective for a period of one year from and
after the date first above written [Jan. 1, 2019].") A "Notice of Termination," issued after the
Agreement had long since expired, was therefore superfluous and a nullity.

Its content is also improper, in that no breach or delinquency of an expired agreement could or did
occur.[1] During 2020, the parties did business without any distributor agreement in place, on an

---

[1] The original "Notice of Delinquency" dated February 19, 2021 was similarly defective, in that no
breach or "delinquency" of an expired agreement had occurred or could occur as of February 19,
2021.



order-to-order basis. Not only did Hoshizaki consent to such an arrangement, it actively promoted it, refusing to enter into any replacement agreement and instead, even at a time when Hoshizaki had presumably already decided to enter into any new agreement, encouraging Automatic Ice to step up its purchases. Through most of 2020, even after Hoshizaki communicated that it would be discarding its three-decades long distributorship arrangement with Automatic Ice, it permitted Automatic Ice to continue to issue purchase orders. It never once suggested it had concerns about payment or that any "breach" existed.

In view of those facts, Automatic Ice has serious concerns about the reasons that Hoshizaki would try to manufacture a non-existent claim of breach. As noted, no breach was even possible because the previous 2019 distributor agreement was already expired.[2] I will pass over a detailed discussion of how Hoshizaki decided to end a valued business relationship. It did so in an abrupt and cursory way that treated Automatic Ice and its founder Jordan Singer with so little respect. Automatic Ice has been a good business partner whose successes Hoshizaki celebrated many times and with many awards over the years, and no one reviewing those circumstances would say Hoshizaki's treatment of Automatic Ice has been consistent with the values Hoshizaki espouses.

But then for Hoshizaki to go on the attack, and to pretend that the rupture of the business relationship was because of some action by Automatic Ice, is really beyond the pale. Having sent void notices of breach under and termination of an expired agreement, Hoshizaki is aggressively seeking to take customers and business away from Automatic Ice. And it is doing so by attempting to disparage and tear down the long-standing and hard-earned reputation that Automatic Ice enjoys in its market in New Jersey.

It is difficult not to conclude that the void legal notices are being used to force blame on Automatic Ice, to sully Automatic Ice with a false claim of breach, and to try to harm it in the marketplace.

At the same time, and knowing of the incredible financial hardship that the COVID-19 pandemic has wreaked on the hospitality business, including Automatic Ice's customers and thus Automatic Ice, Hoshizaki has filed an unnecessary lawsuit – predicated on the same illogical and inaccurate claim of breach of an expired agreement –forcing Automatic Ice to now incur attorney's fees.

As much as it was bewildered by the decision not to enter into a new distributor agreement, Automatic Ice was and remains willing to discuss resolution of any obligations owed by the parties to each other. But it does not wish to do so at a time when Hoshizaki is unfairly undermining and

---

[2] The "Notice of Termination," like the earlier improper February 19, 2021 "Notice of Delinquency" implies that multiple "breaches" occurred; both letters references a "breach" that "includes, but is not limited to" failure to make payment. Putting aside the absence of any agreement to be breached, other than a claim of non-payment, what other alleged "breach" does Hoshizaki have in mind? We ask that Hoshizaki confirm in writing that it is not alleging any other "breach" as of February 19, 2021, apart from a payment issue, or if it is, to provide specific written notice of the basis for such claim.



damaging Automatic Ice's customer relationships, and holding the sword of improper litigation over its head. **We request that Hoshizaki immediately desist from its unfair competition in the marketplace, confirming in writing that it will not be repeating inaccurate claims about Automatic Ice, and that it dismiss the lawsuit it has filed, which is based on a breach claim that is a logical impossibility**. It may dismiss the lawsuit without prejudice if it wishes.

When Hoshizaki maintains its improper position, claiming a termination that was impossible and a breach that could not have occurred, it also presents practical impediments to discussing resolution. Concluding their business relationship for the mutual benefit of both parties will require a good faith and cooperative discussion about the various business issues involved. This cooperative aspect is especially important since there are provisions in the expired agreement (e.g., Section 18.2 concerning inventory), that simply do not apply or make sense given the length of time since the agreement's expiration and the parties' practice during the post-expiration period.

Lastly, as noted in my e-mail, any claim arising out of or related to the expired Distribution Agreement, except as to payment due from Automatic Ice, is subject to mandatory arbitration. Such claims would include the improper claim of breach and a determination of the status of the Agreement's expiration as of January 1, 2020. It would also include claims for unfair competition associated with inaccurate and disparaging statements by Hoshizaki representatives about Automatic Ice and its alleged breach or default, including the false claim that the distributorship was terminated because of some failure to perform by Automatic Ice.

Once the lawsuit has been dismissed and we have written confirmation from Hoshizaki that it will desist from inaccurate claims and disparagement of Automatic Ice, I would suggest that we arrange a time for a business-focused meeting or call between the parties.[3] There are a number of issues, including the disposition of inventory on-hand and the status of warranties on parts and labor, that will best be addressed by the kind of cooperative discussion I have suggested.

As it has previously, Automatic Ice will continue to reserve all of its rights, claims and defenses, whether under Georgia law or otherwise.

---

[3] At that point, to the extent Hoshizaki still believes a pre-negotiation agreement of some sort is required to permit open discussion of resolution, Automatic Ice remains willing to enter into one.



With kind regards, I remain,

Sincerely yours,

ARNALL GOLDEN GREGORY LLP

/s/ Andrew B. Flake

andrew.flake@agg.com

cc:     Client

## Exhibit C – Arbitration Clause of Distributor Agreement

## SECTION 25.   ARBITRATION AND JURISDICTION OF SUPERIOR COURT.

25.1    Arbitration.  All controversies, except as to any payment due from Distributor to Hoshizaki, arising out of or relating to this Agreement or any modification, breach or cancellation thereof, shall be settled by arbitration in the City of Atlanta, in accordance with the rules then in effect of the American Arbitration Association, and the arbitral award shall be final, binding and conclusive on the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.  Judgment on any such award may be entered in any court of competent jurisdiction.  Any controversy as to any payment due from Distributor to Hoshizaki may, at Hoshizaki's option, be submitted to arbitration in like manner.

25.2    Power.  In any arbitration proceeding arising under this Agreement, the arbitrator(s) shall not have the power to change, modify or alter any express condition, term, or provision of this Agreement or to render an award which has such effect and, to that extent, the scope of their authority is so limited.  In addition, the arbitrator(s) shall be required to construe and apply the applicable law, including both statutory and case law, in the same manner as would a United States District Court sitting in the Northern District of Georgia and, to that extent, the scope of their authority is so limited.

25.3    Jurisdiction.  Should the parties resort to litigation as a result of a controversy as to any payment due, or for any other matter for which litigation (as opposed to arbitration) is authorized hereunder, they hereby agree that the sole and proper forum for such litigation shall be any Georgia or United States Court having jurisdiction over the geographic area comprising Fayette County, Georgia, and otherwise having jurisdiction over the subject matter of the action.  In addition, Hoshizaki and Distributor hereby consent to the jurisdiction of the above-described courts for any lawsuit and further agree that any process, notice of motion or other application to the court or a judge thereof may be served outside the State of Georgia by registered mail or by personal service provided a reasonable time for appearance is allowed.

25.4    Equitable Relief.  Notwithstanding the foregoing, Hoshizaki may seek in any appropriate court injunctive or other equitable relief to preserve or otherwise protect the Trademarks or any other intellectual property rights or rights in confidential information of Hoshizaki.


(Distributor Agreement between Claimant and Respondent dated January 1, 2019)

**Exhibit D – Distributor Agreement**



2019
DISTRIBUTOR AGREEMENT

*Between*

HOSHIZAKI AMERICA, INC.

And

Automatic Ice Maker Company



DISTRIBUTOR AGREEMENT

BETWEEN

Automatic Ice Maker Company

AND

HOSHIZAKI AMERICA, INC.

      THIS AGREEMENT is made this 1st day of January, 2019, by and between, on one side, **HOSHIZAKI AMERICA, INC.**, a corporation duly organized and existing under the laws of the State of Georgia, with its principal office at 618 Highway 74 South, Peachtree City, Georgia 30269 ("Hoshizaki America") and **Hoshizaki Northeastern Distribution Center, Inc.**("Distribution Center"), a corporation duly organized and existing under the laws of the State of Georgia, with its principal office at 150 Dupont Street, Plainview, NY 11803, and, on the other side, Automatic Ice Maker Company, a corporation duly organized and existing under the laws of the State of New Jersey with its principal office at 400 South Avenue  Suite 6, Middlesex, New Jersey 08846 ("Distributor").

SECTION 1.   DEFINITIONS.

      1.1    "Hoshizaki" shall mean, as the context requires, "Hoshizaki America and Distribution Center", "Hoshizaki America or Distribution Center" or "Hoshizaki America and/or Distribution Center".  Any notice, consent, waiver or agreement required or permitted to be given to or by "Hoshizaki" hereunder shall be valid (and shall be enforceable with respect to Hoshizaki America and Distribution Center, on one side, and Distributor, on the other) if given to or received by either of Hoshizaki America or Distribution Center, unless the Agreement expressly requires any such notice, consent, waiver or agreement to be given to or by one of either Hoshizaki America or Distribution Center.

      1.2    "Products" shall mean the food service equipment listed on the standard Hoshizaki price list in effect from time to time during the term of this Agreement.  The current Hoshizaki price list is attached Schedule I.  Hoshizaki reserves the right, at any time and from time to time, to modify the definition of "Products" by publishing a new products price list to Distributor (each such modified price list to constitute a new Schedule I to this Agreement).  Each such price list shall become effective as of the date indicated by Hoshizaki on such price list, in a writing sent together with such price list or, if sent in conjunction with renewal of this Agreement, as of the effective date of renewal.

      1.3    "Parts" shall mean all parts with respect to the Products, whether used in connection with the servicing of the Products or otherwise.

      1.4    "Area" shall mean the market(s) indicated on Schedule II.  Upon any annual renewal of this Agreement, Hoshizaki shall have the right in its sole discretion to modify the definition of "Area" by publishing to Distributor a revised designation of market(s), each such revision to constitute a new Schedule II to this Agreement).

1.5     "Affiliate" shall mean, with respect to any actual or legal person, another person which directly or indirectly through one or more intermediaries controls, or is under common control with or is controlled by, such person; where "control" (and its various forms) means, with respect to any legal or actual person, (i) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through the ownership of voting securities, by contract or otherwise, or (ii) the ownership, either directly or indirectly, if at least a majority of the voting stock or other voting equity interest of such person.  Hoshizaki America and Distribution Center are Affiliates of one another.

### SECTION 2.    DISTRIBUTORSHIP.                                                (A)

2.1     Non-exclusive Right.  Hoshizaki hereby grants to Distributor and Distributor hereby accepts the non-exclusive right to sell the Products and Parts in the Area during the term and subject to the provisions and conditions of this Agreement.  Hoshizaki reserves the right to itself and any Hoshizaki Affiliate(s) to sell directly in the Area any and all Products and Parts, and Distributor shall not be entitled to compensation for or based on such sales.

2.2     No Appointment.  Unless Hoshizaki has given or received a notice of termination pursuant to Section 15.1, Hoshizaki shall not appoint another distributor for the Area whose appointment is to take effect during the term of this Agreement. However, Hoshizaki shall incur no liability to Distributor in the event that any Products of Parts are shipped into or sold in the Area by others.

2.3     Duties of Distributor.  Distributor shall use its best efforts to perform the following duties:

(a)  Appoint dealers where necessary, maintain facilities adequate for the sale of the Products and Parts and maintain a business and sales organization adequate to work and develop the Area to the satisfaction of Hoshizaki.

(b)  Purchase from Hoshizaki and maintain an inventory of the Products and Parts sufficient to satisfy the sales demand for the Products in the Area and perform such advertising, demonstration and customer service obligations as may be reasonably required by Hoshizaki from time to time.

(c)  Employ for its business qualified personnel in sufficient numbers to carry out the sale of the Products and Parts in the Area in accordance with the requirements of this Agreement. Distributor shall send its sales manager and/or parts personnel to training schools, courses, workshops or special meetings offered or recommended from time to time by Hoshizaki, at Distributor's sole cost and expense.

(d)  Display and maintain in good order a sufficient number of Hoshizaki signs at its place of business, in appropriate locations and of sufficiently large dimensions so as to be easily viewable to the general public, all in accordance with the recommendations of Hoshizaki.

(e)  (i) During the initial one year term of this Agreement, refrain from the sale or distribution of any products of parties other than Hoshizaki that serve the same or substantially the same function as any of the Products; and (ii) from and after the initial one year term of this Agreement, refrain from the sale or distribution of any products or lines of products manufactured by parties other than Hoshizaki that compete in the marketplace with any products or lines of products manufactured by Hoshizaki.

(f)  Comply with all applicable laws in the conduct of its business under this Agreement.

2.4     Sales Promotion.  Distributor shall undertake, for its own account, such sales, marketing, advertising, and sales promotions of the Products as are consistent with the sales policies of Hoshizaki.

**SECTION 3.    SALE OF PRODUCTS.**

        3.1     Sales Plan.  Distributor shall actively and aggressively promote the sale of the Products in the Area, furnish prompt, efficient and courteous customer service for the Products, and use its best efforts to develop the full sales potential of the Area to Hoshizaki's satisfaction.  As part of its sales planning, Distributor shall, with the assistance of a Hoshizaki representative if requested by Distributor, prepare marketing plans and submit copies thereof to Hoshizaki, from time to time but not less than once a year.

        3.2     Minimum Purchase Objectives.  Distributor shall use its best efforts to achieve certain minimum purchase objectives set from time to time by Hoshizaki.  The minimum purchase objectives shall be established by Hoshizaki based upon its evaluation of the sales potential of Distributor's Area, taking into consideration the Area's size and population, Distributor's previous sales record, estimated total prior unit and dollar sales of Products in the Area, and other economic and market factors pertaining to the Area.  Hoshizaki shall review the quantity and volume of Distributor's purchases on an annual basis, and Hoshizaki may review Distributor's purchases on a more frequent basis if Hoshizaki believes such reviews are necessary or appropriate in evaluating Distributor's performance of its obligations hereunder.  Hoshizaki will consult with Distributor regarding the minimum purchase objectives established by Hoshizaki under this Agreement, but Hoshizaki shall have final authority in setting the minimum purchase objectives.  The minimum purchase objectives for Distributor during the initial term of this Agreement are set forth on Schedule III.  Hoshizaki reserves the right in its sole discretion to modify the minimum purchase objectives by publishing to Distributor a new Schedule III (each such modified minimum purchase objectives to constitute a new Schedule III to this Agreement) in conjunction with any annual renewal of this Agreement.

        3.3     Sales Outside of Area.  Distributor agrees to comply with Hoshizaki's policies with respect to start up and check, as such policies may be modified or amended by Hoshizaki from time to time, as to each sale of a Product by Distributor installed outside of the Area.  Distributor acknowledges that Hoshizaki is subject to contractual restrictions on its ability to sell Products outside the United States, and Distributor agrees that it shall not knowingly sell any Products for installation outside of the United States without the prior written consent of Hoshizaki in each instance.

        3.4     Selling within territory.  Distributor acknowledges that they are subject to contractual
Restrictions on their ability to sell Products within their territory, and Distributor agrees that it shall not knowingly sell any Products outside the Distributor's assigned territory without the prior written consent of Hoshizaki in each instance.

**SECTION 4.    PRICE AND PAYMENT.**

        4.1     Price.  The Products (the term "Products" as used in Sections 4 and 5 hereof shall also include Parts) shall be purchased by Distributor at Hoshizaki's standard distributor prices in effect from time to time during the term of this Agreement.  The base prices charged by Hoshizaki America and Distribution Center will be identical (for identical models and numbers of units), however, shipping and related charges may vary.  Hoshizaki shall have the right at any time and from time to time to establish new price lists and to change prices, terms and provisions therein contained.  Hoshizaki shall give written notice to Distributor of any changes affecting prices.

        4.2     Payment.  Distributor shall pay the purchase price for the Products to whichever of Hoshizaki America or Distribution Center supplied such Products to Distributor, at the  principal office of Hoshizaki America or Distribution Center, as applicable, or at such other place as Hoshizaki America or Distribution Center, as applicable, may designate in writing to Distributor.  Each payment of the purchase price for Products shall be accompanied by the green copy of Hoshizaki's corresponding invoice.  In the event that Distributor shall not take delivery of and purchase the full quantity and type of the Products specified in any order, and regardless of the price indicated on Hoshizaki's original invoice, Distributor shall pay as the purchase price therefor the price for such type of Products adjusted for the quantity of the

Products actually delivered to and purchased by Distributor, as set forth on the then current Hoshizaki price list.

4.3     Collection Charges.  Distributor shall pay all collection charges, including, but not limited to, attorneys' fees, incurred in connection with its payment of the purchase price of the Products. In the event Distributor becomes delinquent in the payment of any of its obligations to Hoshizaki or to other Hoshizaki distributors, Hoshizaki, in addition to its other rights and remedies, shall have the right to suspend further shipment of the Products to Distributor until such delinquency is cured.

4.4     Delinquency Charges.  In the event of a delinquency in the payment of the purchase price, Distributor shall pay to Hoshizaki America or Distribution Center, as applicable, a late charge fee on the overdue amount, calculated at the rate of 1-1/2% per month for each month or portion thereof that such payment is overdue, or at the highest rate of interest allowed under applicable law, whichever is less.

4.5     Additional Security.  At Hoshizaki's request, Distributor shall secure and provide to Hoshizaki a letter of credit, issued by such financial institution, in such amount and containing such terms and conditions as are acceptable to Hoshizaki.  In addition, at Hoshizaki's request, Distributor shall execute and deliver to Hoshizaki such documents, including, without limitation, a purchase money security agreement and UCC-1 financing statements, all in form and substance acceptable to Hoshizaki, as may be necessary or appropriate in order for Hoshizaki to obtain and perfect a first priority purchase money security interest in the Products sold by Hoshizaki to Distributor hereunder.

## SECTION 5.     ORDER TERMS.

The purchase of Products by Distributor from Hoshizaki pursuant to this Agreement shall be in accordance with the terms and conditions set out in this Section 5 (collectively the "Order Terms"); provided, however, that Hoshizaki reserves the right, at any time and from time to time, to modify the Order Terms by providing written notice of such modification to Distributor.

5.1     Submission of Orders.  Distributor may place each order with either Hoshizaki America or Distribution Center. Each order for Products submitted by Distributor to Hoshizaki shall be in writing, which writing may be made by facsimile or otherwise (or, if authorized by Hoshizaki, communicated by telephone or e-mail and promptly followed by written confirmation), and shall set forth the model number(s), part name(s), part number(s) and quantity(s) of Products ordered and the requested shipping date(s) and shipping destination(s). All orders for Products shall be subject to the Order Terms, and no purchase order for Products submitted by Distributor shall contain any terms or conditions in addition to or conflicting with the Order Terms.

5.2     Acceptance of Orders.

(a) Each purchase order from Distributor shall be subject to acceptance by Hoshizaki America or Distribution Center, as applicable, and the applicable party may accept any order for Products by depositing an acknowledgment of such order in the United States Mail, postage prepaid and addressed to Distributor, or by shipping the Products ordered, or any portion thereof, at any time prior to Distributor's canceling such order by giving Hoshizaki America or Distribution Center, as applicable, a written notice of cancellation which references such order and (notwithstanding Section 23) is actually received by Hoshizaki America or Distribution Center, as applicable, prior to 12:00 p.m. (local time for Hoshizaki America or Distribution Center, as applicable) on the business day of Hoshizaki America or Distribution Center, as applicable, immediately preceding the date of shipment of the Products or any portion thereof pursuant to such order.

(b) With respect to each Distributor purchase order, whichever of Hoshizaki America or Distribution Center receives such order may advise Distributor that only the other such party may be available to accept such order or that the other party may be able to offer more favorable shipping terms. Each of Hoshizaki America and Distribution Center shall have the right to transfer the rights to

accept, or previously accepted, purchase orders to the other party, which shall remain binding on Distributor so long as the other of Hoshizaki America or Distribution Center is able to offer shipping terms (cost and delivery date) at least as favorable as those offered by the one to which Distributor placed such purchase order(s).  In the event such a transfer of a purchase order(s) would result is less favorable shipping terms to Distributor (cost or delivery date), such transfer shall not be binding on Distributor unless Distributor gives prior written consent thereto.

      5.3     Identification, Shipment, Title and Risk of Loss.

      (a)  Identification of the Products shall occur when the Products are shipped. Each shipment of Products shall be collect, F.O.B. Hoshizaki America's or Distribution Center's warehouse, as applicable, or other designated point of delivery.  Hoshizaki America or Distribution Center, as applicable, shall put the Products in possession of a carrier, contract with the carrier for the shipment of the Products to the destination designated in Distributor's order and obtain and promptly deliver to Distributor the documents, if any, necessary to obtain possession of the Products.  Hoshizaki America or Distribution Center, as applicable, shall bear the expense of putting the Products in the possession of the carrier.  Distributor shall promptly notify Hoshizaki America or Distribution Center, as applicable, of the carrier designated by Distributor to convey the Products, if any, and Distributor shall bear all other expenses of transportation, including, without limitation, storage and freight.  Title to and risk of loss of the Products shall pass to Distributor upon placement of the Products into the carrier's possession by Hoshizaki.  The Products shall be deemed tendered to Distributor upon their delivery to the carrier by Hoshizaki America or Distribution Center, as applicable.

      (b)  Hoshizaki America or Distribution Center, as applicable, shall use commercially reasonable efforts (consistent with its then current sales and credit policies and procedures) to accommodate Distributor's request to ship the Products at one time or in portions from time to time on or before the date(s) requested by Distributor; provided, however, and notwithstanding the foregoing or any other term of the Order Terms, each of Hoshizaki America or Distribution Center, as applicable, shall have the right to ship all of the Products in portions from time to time prior to the requested shipment date.  The shipment of nonconforming Products, or a default of any nature, in relation to one or more orders or installments of the Products shall not substantially impair the value of other Products, or the order or installment as a whole, and shall not constitute a total breach of any order or the Order Terms as a whole.

      5.4     Delay.  If Hoshizaki is unable or fails to comply with any shipment date(s) requested by Distributor under any order, Distributor may cancel such order by actual delivery to Hoshizaki America or Distribution Center, as applicable, of a written notice of cancellation referencing the order, in accordance with the cancellation procedures set out in Section 5.2, but such cancellation shall not affect or cancel such order as to any portion of the Products shipped by Hoshizaki prior to or on the date of receipt of such notice.  Hoshizaki shall use commercially reasonable efforts to comply with all shipment date(s) requested by Distributor in accepted purchase orders and to notify Distributor if it is unable or will fail to comply with such requested shipment date(s); but in no event shall Hoshizaki be liable to Distributor for damages (however described or arising) for a good faith failure to fulfill or meet such requested shipment date(s).

      At all times, Hoshizaki shall have the absolute right to apportion its materials and products among its customers in such manner as it shall determine in its sole discretion, upon the occurrence of any event, including, without limitation, any of those events described in Section 11, which results in a determination by Hoshizaki, in its sole discretion, that it is necessary to apportion such materials or products among its customers.

      5.5     Distributor's Remedies.

      (a)  Distributor's sole and exclusive remedy against Hoshizaki with respect to this Agreement shall be to secure repair or replacement of any Products that do not conform to their description as set forth on the order submitted by Distributor and accepted by Hoshizaki.  Within 20 days

of Distributor's receipt of any Products Distributor shall notify Hoshizaki America (including in the case of products shipped by Distribution Center) in writing of any nonconformity of such Products; whereupon Hoshizaki shall, at its option and expense, repair or replace the nonconforming Products. Hoshizaki shall bear all transportation charges in connection with exercise of its rights under this Section 5.5(a).

(b)  Any action for a breach of the Order Terms must be commenced within one year after the cause of action has accrued.  No claim by Distributor of any kind, whether or not based on Hoshizaki's alleged negligence, shall be for an amount greater than the purchase price of such portion of the Products with respect to which such claim is made.  In no event shall Hoshizaki be liable to Distributor for any special, indirect, incidental, consequential, exemplary or punitive damages, whether or not caused by or resulting from the negligence of Hoshizaki, by reason of the fact that the Products do not conform to the terms and conditions of the Order Terms or the warranty provisions of Section 7 or any other warranty or standard, whether express or implied (although it is the intention of the parties that all such other warranties and standards are excluded and disclaimed by Hoshizaki).  Notwithstanding the foregoing, this Section 5.5 shall not limit the liability of Hoshizaki or any other person for bodily injury caused by any item of the Products.

(c)  Distributor shall not set off against any amounts owed to Hoshizaki pursuant to this Agreement or any purchase order hereunder any sums arising under any other purchase order or transaction between Hoshizaki and Distributor.

## SECTION 6.    PARTS OBLIGATIONS AND SERVICE.

6.1    Service Authorization.  It is the responsibility of Distributor to provide users of the Products in the Area (or any service representatives of Hoshizaki servicing Products in the Area) with Parts (whether or not such users were supplied Products by Distributor).  For those purposes, Distributor shall be responsible for ensuring that an inventory of Parts adequate in relation to the needs of the Area is maintained, which, in any event, shall not be less than the minimum inventory of Parts recommended by Hoshizaki.  All service functions with respect to the Products shall be performed by organizations designated by Hoshizaki.

6.2    Compliance with Programs and Policies Regarding Parts.  Distributor shall maintain and provide Parts pursuant to this Section 6 and otherwise cooperate with the service organizations designated by Hoshizaki in accordance with all Hoshizaki policies and programs relating thereto, as such may be modified or amended by Hoshizaki from time to time.

6.3    Evaluation.  Hoshizaki may evaluate annually, or at more frequent intervals when deemed necessary by Hoshizaki, Distributor's performance in maintaining a satisfactory inventory of Parts, and in otherwise complying with its obligations under this Section 6, and Hoshizaki may consider such evaluation in determining whether to renew this Agreement, to modify the Area or to exercise other rights with respect to this Agreement.

## SECTION 7.    WARRANTY.

7.1    Warranty Policy.  All Products sold by Hoshizaki to Distributor under this Agreement are covered by the "Hoshizaki Limited Warranty" in effect at the time of sale, and Distributor shall sell the Products only under the Hoshizaki Limited Warranty.

7.2    Compliance.  Distributor shall comply with all the terms and conditions of the Hoshizaki Limited Warranty for the benefit of all purchasers of the Products and users of the Products in the Area (whether or not such users were supplied Products by Distributor).  Distributor shall process and dispose of warranty claims on the Products in accordance with such procedures as may be prescribed from time to time by Hoshizaki, and Hoshizaki shall have no obligation to recognize any warranty claims unless Distributor complies with the prescribed procedures.

7.3     Manufacturer's Limited Warranty.  The warranties stated in the Hoshizaki Limited Warranty are the only warranties made in connection with the sale and distribution of the Products hereunder, and the obligations stated therein shall be the limit of Hoshizaki's liability for breach of said warranties.  Any and all other express, statutory, and implied warranties applicable to the Products, including, without limitation, all implied warranties of merchantability and fitness for use, are expressly disclaimed.  In no event shall Distributor, its customers or users, be entitled to recover incidental or consequential damages, including, but not limited to, damages for inconvenience, rental or replacement equipment, loss of profits, or commercial loss.  Hoshizaki neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of the Products.

7.4     Maintain Records.  It shall be Distributor's responsibility to maintain records by serial number and by purchaser, of each Product sold, for a period of not less than five years from the date of sale.  Distributor's obligation hereunder shall survive termination of this Agreement, and such records shall be retained by Distributor and made available to Hoshizaki in the event of a recall or product modification or otherwise upon request by Hoshizaki.


### SECTION 8.     PROMOTION AND ADVERTISING.

8.1     Advertising.  Distributor shall, at its own cost and expense and to the satisfaction of Hoshizaki, advertise the Products in the Area through appropriate advertising media.  With respect to any year for which this Agreement is renewed, Hoshizaki and Distributor shall agree in advance on the promotional and advertising plan for such year and shall consult with each other from time to time on Distributor's promotional and advertising activities in the Area.  Hoshizaki may, at its option and when it deems proper, but shall not be obligated to, perform for its own account various promotional and advertising activities for the Products in the Area.

8.2     Internet Minimum Advertised Price (IMAP)
Distributors shall (where allowed by law) conform to an Internet Minimum Advertised Price (IMAP) policy.  Under the IMAP program, sellers of Hoshizaki Products will only be able to advertise prices equal to or greater than 50% of current Hoshizaki published List Price.

Hoshizaki America is not acting to restrict the price at which to sell our products. The final sale price is at the discretion of the selling party.  Hoshizaki's requirement only impacts the price that Hoshizaki Products may be advertised. Distributors are expected to enforce this IMAP requirement upon their dealer base.

8.3     Advertising Materials.  Hoshizaki shall provide Distributor at reasonable cost with catalogs, leaflets and other advertising materials and such information and data on the Products as Hoshizaki deems adequate for the needs of Distributor.

8.4     Sales Promotion.  Distributor agrees to participate, upon such reasonable terms as Hoshizaki may request, in programs such as yellow page trademark listings, direct mail solicitations, approved trade shows and other activities deemed beneficial to the market development of Hoshizaki Products, upon written notice from Hoshizaki.


### SECTION 9.     TRADEMARK LICENSE.

9.1     Trademarks.  All Products sold by Distributor shall bear the trademarks or tradenames listed on Schedule IV (**Brand Guidelines**) and no other trademarks or trade names. Distributor shall not modify, add to or otherwise change the design, format or form of any of the Trademarks.

9.2     License.  Hoshizaki grants to Distributor during the term of this Agreement a royalty-free, non-exclusive license, without a right to sublicense, to use the Trademarks in connection with

the promotion and sale of the Products as provided for herein and in accordance with the **"Brand Guidelines"** attached hereto as Schedule IV (as may be amended by Hoshizaki from time to time upon being published to Distributor).  Distributor shall not use or incorporate the Trademarks in or as part of a trade name, corporate name, or business name.  Distributor acknowledges that considerable time and money has been expended to create the goodwill associated with the Trademarks.  Distributor shall always act in a manner that would maintain the quality and goodwill associated with the Trademarks, and Distributor shall not use the Trademarks in any manner likely to confuse, mislead or deceive the public, or be injurious or inimical to the goodwill or best interest of Hoshizaki.  Nothing contained herein shall give Distributor any interest or right in the Trademarks, except as is expressly granted herein, and Distributor agrees not to challenge in any fashion the validity of any of the Trademarks.

### SECTION 10.   FINANCIAL REPORTS.

10.1     Financial Reports.  Distributor shall furnish to Hoshizaki financial reports as follows:

(a)  Within three and one-half months after the close of Distributor's fiscal year, a balance sheet and income statement; and

(b)  Such interim financial or operating statements or other financial documents as deemed necessary and requested from time to time by Hoshizaki.

10.2     Other Reports.  Distributor shall submit to Hoshizaki monthly reports on the sale of the Products and Parts, Distributor's inventory of the Products and Parts, and on other matters as required by Hoshizaki.

### SECTION 11.   NO LIABILITY FOR NON-PERFORMANCE.

Hoshizaki shall not be liable for any delay or failure to perform any of its obligations hereunder due to causes beyond its control, including, but not restricted to, acts of God, acts of the government, war, fire, flood, strike or labor trouble, priorities or allocations adopted in conformance with any order or request of any government, or inability to get sufficient materials or transportation facilities. Hoshizaki shall not in any event be held liable for indirect or consequential damages.

### SECTION 12.   INSURANCE.

Distributor shall maintain adequate insurance for all risks of loss or damage to the Products and Parts following their delivery by Hoshizaki America or Distribution Center to the carrier in accordance with Section 5.3 and until their resale and delivery by Distributor to its customer.  In addition, if requested by Hoshizaki, Distributor shall maintain in full force and effect public liability insurance on the operation of the distributorship being established hereunder with coverage limits satisfactory to Hoshizaki. Distributor shall furnish to Hoshizaki copies of policies of insurance or certificates evidencing the existence and amounts of such insurance upon request.

### SECTION 13.   INDEPENDENT CONTRACTOR.

13.1     Distributor is an independent contractor and is not the legal representative of Hoshizaki for any purpose and shall have no right or authority to incur, assume, or create in writing or otherwise, any warranty, liability, or obligation, express or implied, in the name of or on behalf of Hoshizaki.

13.2    The Products shall be purchased by Distributor for its own account and the prices at which the Products are resold by Distributor shall be determined solely by Distributor.

13.3    Any taxes, excises, assessments, levies, costs, charges or penalties (except taxes payable with respect to the income of Hoshizaki) which may be assessed, levied, demanded or imposed by any governmental agency in connection with this Agreement shall be paid by and are the sole obligation of the Distributor.  The Distributor shall comply with all procedures necessary to claim exemptions from all such taxes.

## SECTION 14.    TERM OF AGREEMENT.

14.1    Initial Term.  This Agreement shall be effective for a period of one year from and after the date first above written, unless sooner terminated by Hoshizaki in accordance with Section 15.2 hereof.

14.2    Extension.  This Agreement may be extended at Hoshizaki's sole discretion and upon agreement with Distributor for successive periods of one year each.  If Hoshizaki desires to so extend this Agreement, it shall notify Distributor to such effect prior to the expiration of the then current term and shall notify Distributor as to the Area within which Distributor may sell the Products during any such renewal period.  Distributor agrees to notify Hoshizaki as soon as practicable following receipt of such notice whether or not Distributor will continue as a Hoshizaki distributor during the extension period.

## SECTION 15.    TERMINATION.

15.1    Termination by Either Party.  Either Hoshizaki or Distributor may terminate this Agreement at any time following the completion of the initial term hereof, without cause, upon 60 days' prior written notice.

15.2    Termination by Hoshizaki.  In addition to its termination rights under Section 15.1, Hoshizaki may, at its option, at any time during the term of this Agreement, terminate this Agreement immediately by mailing written notice of termination to Distributor upon the occurrence of any of the following events of default:

(a)  Failure of Distributor to pay any payment due to Hoshizaki within 10 days after receipt of written notice of delinquency from Hoshizaki.

(b)  Failure of Distributor to develop adequately its Area, as evaluated under the purchase criteria set forth in Section 3, or to maintain and provide Parts as evaluated under the criteria set forth in Section 6.

(c)  Material breach by Distributor of any terms or provisions of this Agreement or any corporate policies of Hoshizaki previously published to Distributor and still applicable which continues for a period of 30 days after written notice thereof by Hoshizaki to Distributor.

(d)  Submission by Distributor to Hoshizaki of a fraudulent or misleading report, statement, or claim for reimbursement, refund or credit, or of fraudulent or misleading financial information.

(e)  Any sale, transfer, or relinquishment, in one or, cumulatively, in more than one transaction, voluntarily or involuntarily, by operation of law or otherwise, of a majority ownership interest in, or any significant change in management of, Distributor, without the prior written consent of Hoshizaki.

(f)  Any attempted assignment of this Agreement by Distributor (as "assignment" is defined in Section 24) without the prior written consent of Hoshizaki.

(g)  Any change in the location of  Distributor's principal office, without the prior written consent of Hoshizaki.

(h)  Any impairment of the reputation or financial standing of Distributor or any of its management subsequent to the execution of this Agreement.

(i)  Any dispute, disagreement or controversy between or among the partners, managers, officers, or stockholders of Distributor which in the reasonable opinion of Hoshizaki adversely affects the ownership, operation, management, business or interest of Distributor or Hoshizaki.

(j)  The inability of Distributor to satisfy its obligations as and when due, or the filing of any petition under any bankruptcy law, or the execution by Distributor of an assignment for the benefit of creditors, or the appointment of a receiver or trustee for Distributor which is not removed within 30 days from its appointment thereto, or any levy of Distributor's property under attachment or execution which is not vacated or removed by payment or bonding within 10 days.

(k)  Close of Distributor's place of business for 10 continuous business days, except in the event such closure or cessation of operation is caused by some physical event beyond the control of Distributor, such as civil war, riots, fire, floods, earthquakes or other acts of God.

## SECTION 16.   DUTIES UPON TERMINATION.

16.1     Duties.  Upon non-renewal or termination of this Agreement for any reason, Distributor shall promptly:

(a)  Desist from advertising and holding itself out as a Hoshizaki distributor and from using any other materials or signs relating to the Products; and

(b)  Cease all sales solicitations and sales of the Products (except for the sale of Products which are not repurchased by Hoshizaki pursuant to Section 18).

16.2     Cancellation.  Upon non-renewal of this Agreement or termination of this Agreement by either Hoshizaki or Distributor for any reason, all purchase orders for the Products or Parts which have not been delivered to Distributor prior to the termination date may be cancelled by Hoshizaki America or Distribution Center, as applicable, in its own discretion, except for purchase orders for those Products which Distributor has sold to its customers prior to the date of expiration or termination of this Agreement pursuant to bona fide written contracts or as to which Distributor has made a firm quotation, authorized by Hoshizaki, which leads to a sale within 30 days from such quotation.

16.3     No Release.  Non-renewal or termination of this Agreement shall not release either Hoshizaki or Distributor from the payment of any sum then or thereafter owing to the other party. Hoshizaki may, at its option, apply any sums due or to become due from Hoshizaki to Distributor to the payment of any sums, accounts, or obligations (whether or not contingent and whether or not matured) which are due or may become due from Distributor and pay any balance to Distributor when finally determined by Hoshizaki.

## SECTION 17.   DISCONTINUANCE OF USE OF MARKS.

17.1     Discontinuance of Use.  Upon non-renewal or termination of this Agreement, Distributor shall immediately:

(a)  Discontinue the use of the word "Hoshizaki" and the Trademarks, or any semblance of same, including, without limitation, the use of all stationery and other printed material referring in any way to or bearing the word "Hoshizaki" or any of the Trademarks, and file a change or discontinuance of such name with the appropriate authorities, if necessary.

(b) Remove all product signs bearing the word "Hoshizaki" or the Trademarks at Distributor's sole cost and expense and return to Hoshizaki all advertising or promotional materials upon which the Trademarks appear.

(c) Cease representing itself as a Hoshizaki distributor.

(d) Cease any advertising or any other action stating or implying that it is authorized to sell or distribute the Products.

17.2     Removal.  In the event Distributor fails to comply with the terms and conditions of this Section17, Hoshizaki shall have the right to enter upon Distributor's premises and remove all signs bearing the word "Hoshizaki" or the Trademarks, without incurring any liability to Distributor, and Distributor shall reimburse Hoshizaki for any costs and expenses incurred in connection therewith, including reasonable attorneys' fees.

## SECTION 18.   REPURCHASE OPTION.

18.1     Option.  Upon non-renewal or termination of this Agreement by either Hoshizaki or Distributor for any reason, Hoshizaki may elect to repurchase the following, subject to the provisions hereof:

(a)     All new, undamaged, and saleable Products of the current model in original cartons then unsold on hand in Distributor's possession, at Distributor's net cost less 15%, or at Hoshizaki's "Standard Distributor Price" for the identical Products on the date of termination of this Agreement, whichever is lower, less prior refunds or allowances and any costs required to place the Products in a new condition and to transport them to the destination designated by Hoshizaki.

(b)     All new, saleable, and undamaged Parts with Hoshizaki's original labels and packages which then appear on Hoshizaki's current price list, on hand in Distributor's place of business or in Distributor's possession, at Hoshizaki's Standard Price for the identical Parts on the date of termination of this Agreement, less 15% of said Standard Price and any costs to transport them to the destination designated by Hoshizaki.

18.2     Inventory.  Within 30 days after termination of this Agreement, Distributor shall furnish Hoshizaki on forms supplied by Hoshizaki a detailed inventory of all items of the Products and Parts which Hoshizaki has elected to repurchase.  During this period, Hoshizaki may enter upon Distributor's premises to compile inventory and Distributor will reimburse Hoshizaki for costs incurred in connection therewith.

18.3     Convey Title.  Distributor shall take such action and execute and deliver such instruments as may be necessary to convey to Hoshizaki good and marketable title to all the Products and Parts being repurchased hereunder, comply with the requirements of any applicable state law relating to bulk sales or transfers, and satisfy and discharge any liens and encumbrances on the Products prior to delivery thereof to Hoshizaki.

18.4     Repurchase Price.  The repurchase price for all Products and Parts purchased by Hoshizaki pursuant to this Section shall be paid or, at the option of Hoshizaki, credited against amounts owing to Hoshizaki from Distributor as soon as practicable after delivery of those Products and Parts to Hoshizaki, but in no event later than 60 days from such date of delivery.

18.5     Risk of Loss.  Distributor shall bear all risks of loss or damage to the Products and Parts until they are delivered to Hoshizaki.  Distributor shall pay all costs of packing, handling, shipping, transporting, insuring, and delivering the repurchased Products and Parts to Hoshizaki at the location designated by Hoshizaki.  Hoshizaki shall bear the cost of unloading the Products and Parts from the carrier at the designated destination.

18.6 Repurchase Upon Appointment of New Distributor. If following the giving by Hoshizaki of a termination notice pursuant to Section 15.1, Hoshizaki appoints a new distributor for the Area and such distributor will assume such position within 30 days after the effective date of termination of Distributor, then Hoshizaki shall exercise its repurchase option contained in Section 18.1 and repurchase qualifying Products and Parts in Distributor's possession at a repurchase price equal to Distributor's net cost for such Products and Parts and in accordance with the other terms and conditions set forth in this Section 18.

### SECTION 19.   CONFIDENTIAL INFORMATION.

Hoshizaki may from time to time disclose to Distributor confidential information pertaining to the Products or other confidential information of Hoshizaki.  Hoshizaki shall have the right to condition any such disclosure on Distributor's first executing a confidentiality and nondisclosure agreement acceptable to Hoshizaki.

### SECTION 20.   INDEMNIFICATION.

Distributor shall defend and indemnify Hoshizaki against and hold Hoshizaki free and harmless of all liabilities, damages, actions, causes of actions, costs and expenses (including, without limitation, reasonable attorneys' fees) that may be asserted or arise or be incurred by Hoshizaki by reason of Distributor's failure to comply with any term or provision of this Agreement.

### SECTION 21.   WAIVER.

Waiver by either Hoshizaki or Distributor, or failure by either party to claim a breach, of any provision of this Agreement shall not be, or be held to be, a waiver of any other or subsequent breach, or affect in any way the effectiveness of such provision, or any other provision of this Agreement.

### SECTION 22.   AMENDMENT.

This Agreement, including the Schedules and Exhibits to this Agreement which by this reference are made a part hereof, reflects all the agreements, understandings, representations, conditions, and warranties by and between the parties.  Neither Hoshizaki nor Distributor shall be liable for any representation made unless it is expressly set forth in this Agreement, and this Agreement may not be modified or amended except in a writing signed by each of Hoshizaki America, Distribution Center and Distributor, provided that Hoshizaki shall have the right to amend this Agreement unilaterally by modifying the Order Terms, as authorized under Section 5, or any Schedules, as authorized under Sections 1.1, 1.2, 3.2 and 3.3.

### SECTION 23.   NOTICES.

All notices required or permitted to be given or made under this Agreement may be effected by personal delivery in writing or by facsimile, which shall be deemed communicated on the date received, or by registered airmail, postage prepaid, return receipt requested, which shall be deemed communicated 3 days from the mailing thereof.  Notices shall be addressed to the parties at their addresses specified on the signature page of this Agreement or such other addresses as either party may designate in writing in the manner provided herein.

### SECTION 24.   NO ASSIGNMENT.

Distributor does not have the right to assign this Agreement or any of its rights or obligations hereunder, either in whole or in part, without the prior written consent of Hoshizaki. Hoshizaki reserves the right to withhold such consent in its sole discretion. Subject to the foregoing provisions, this Agreement shall be binding upon the successors, assigns and legal representatives of the parties. For the purpose of this Agreement, "assignment" shall include the sale of all or substantially all of the assets or 50% or more of the stock or other equity interest in Distributor in one or more transactions or the merger of Distributor with or into any other entity. Distributor acknowledges that in the event it is acquired by another party or acquires another distributor of Hoshizaki or any Hoshizaki Affiliate, there can be no assurance that Hoshizaki will not elect to terminate this Agreement or that the acquiring party will be able to assume the territory of the acquired party.

### SECTION 25. ARBITRATION AND JURISDICTION OF SUPERIOR COURT.

25.1    Arbitration. All controversies, except as to any payment due from Distributor to Hoshizaki, arising out of or relating to this Agreement or any modification, breach or cancellation thereof, shall be settled by arbitration in the City of Atlanta, in accordance with the rules then in effect of the American Arbitration Association, and the arbitral award shall be final, binding and conclusive on the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns. Judgment on any such award may be entered in any court of competent jurisdiction. Any controversy as to any payment due from Distributor to Hoshizaki may, at Hoshizaki's option, be submitted to arbitration in like manner.

25.2    Power. In any arbitration proceeding arising under this Agreement, the arbitrator(s) shall not have the power to change, modify or alter any express condition, term, or provision of this Agreement or to render an award which has such effect and, to that extent, the scope of their authority is so limited. In addition, the arbitrator(s) shall be required to construe and apply the applicable law, including both statutory and case law, in the same manner as would a United States District Court sitting in the Northern District of Georgia and, to that extent, the scope of their authority is so limited.

25.3    Jurisdiction. Should the parties resort to litigation as a result of a controversy as to any payment due, or for any other matter for which litigation (as opposed to arbitration) is authorized hereunder, they hereby agree that the sole and proper forum for such litigation shall be any Georgia or United States Court having jurisdiction over the geographic area comprising Fayette County, Georgia, and otherwise having jurisdiction over the subject matter of the action. In addition, Hoshizaki and Distributor hereby consent to the jurisdiction of the above-described courts for any lawsuit and further agree that any process, notice of motion or other application to the court or a judge thereof may be served outside the State of Georgia by registered mail or by personal service provided a reasonable time for appearance is allowed.

25.4    Equitable Relief. Notwithstanding the foregoing, Hoshizaki may seek in any appropriate court injunctive or other equitable relief to preserve or otherwise protect the Trademarks or any other intellectual property rights or rights in confidential information of Hoshizaki.

### SECTION 26. GOVERNING LAW.

This Agreement and all of its terms and conditions shall be governed, construed, and enforced in accordance with the laws of the State of Georgia.

### SECTION 27. SEVERABILITY.

The invalidity in whole or in part of any provision hereof shall not affect the validity of the remainder of such provision or any other provision hereof.

IN WITNESS WHEREOF, the undersigned have executed this Agreement, by and through their duly authorized officers, on the day and year first written.

Representing:

Hoshizaki America, Inc.
Hoshizaki Northeastern Distribution Center, Inc.

Signature: _____     Date: 4/17/19
                    Jim Procuro

Title: Sr. Vice President, Sales & Marketing
Hoshizaki America, Inc.

Representing:

Automatic Ice Maker Company
400 South Avenue  Suite 6
Middlesex New Jersey 08846

Signature: _____     Date: 3/12/19

Print Name: Jordan S.

Title: PRESIDENT

Address of Distributor's warehouse(s)  if not same as Distributor's principal business address on page one:

_____

_____

_____

_____



# Schedule III

## Minimum Purchase Objective
### January 1, 2019 through December 1, 2019

Distributor: Automatic Ice Maker Company

|  | Units | Dollars |
|---|---|---|
| Ice Machines |  | $ 4,330,000 |
| Reach-Ins, Back Bar, GDM | 625 | $ 1,332,000 |
| TOTAL | 625 | $ 5,662,000 |

## Automatic Ice Maker Company Territory by County 2019

| Coverage State | Coverage County | Name | City |
| --- | --- | --- | --- |
| NJ | BERGEN | Automatic Ice Maker Company | Middlesex |
| NJ | ESSEX | Automatic Ice Maker Company | Middlesex |
| NJ | HUDSON | Automatic Ice Maker Company | Middlesex |
| NJ | HUNTERDON | Automatic Ice Maker Company | Middlesex |
| NJ | MERCER | Automatic Ice Maker Company | Middlesex |
| NJ | MIDDLESEX | Automatic Ice Maker Company | Middlesex |
| NJ | MONMOUTH | Automatic Ice Maker Company | Middlesex |
| NJ | MORRIS | Automatic Ice Maker Company | Middlesex |
| NJ | OCEAN | Automatic Ice Maker Company | Middlesex |
| NJ | PASSAIC | Automatic Ice Maker Company | Middlesex |
| NJ | SOMERSET | Automatic Ice Maker Company | Middlesex |
| NJ | SUSSEX | Automatic Ice Maker Company | Middlesex |
| NJ | UNION | Automatic Ice Maker Company | Middlesex |
| NJ | WARREN | Automatic Ice Maker Company | Middlesex |

SCHEDULES INCLUDED WITH DISTRIBUTOR AGREEMENT

Schedule I      --      Current Price List is <u>not</u> included, but will be sent
                        in the Distributor Mailing

Schedule II     --      "Area" Description

Schedule III    --      Minimum Purchase Objectives ("MPO")

Schedule IV     --      Brand Guidelines